CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 10 2018
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MILES AGBAJE, | ) |
| Plaintiff, | ) Case No. 4:17-cv-00055 |
| v. | ) **MEMORANDUM OPINION** |
| HARGRAVE MILITARY ACADEMY, | ) By: Hon. Jackson L. Kiser |
| Defendant. | ) Senior United States District Judge |

This matter is before the Court on Defendant Hargrave Military Academy's ("Hargrave") Motion for Summary Judgment. Hargrave contends that the charitable immunity doctrine shields it from liability against Plaintiff Miles Agbaje's ("Plaintiff") negligence claim. The matter was fully briefed by the parties, and I heard oral argument during a telephonic hearing on July 5, 2018. I have reviewed the pleadings, evidence of the parties, and arguments, and the matter is now ripe for disposition. For the reasons stated herein, I find that Hargrave was organized and does operate with a charitable purpose, and that Plaintiff was a beneficiary of Hargrave's charity at the time of his injury. Accordingly, Hargrave is entitled to the immunity afforded by the charitable immunity doctrine, and its motion for summary judgment will be granted.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Hargrave is a military boarding school located in Chatham, Va. In December of 2013, Plaintiff, a Maryland resident, was a student at Hargrave and was a member of Hargrave's junior varsity basketball team. During practice on December 4, 2013, Coach Tom Messenger required Plaintiff to run a drill which required him to drive to the basket while Messenger stood in his

path with a pad to simulate a defender. While driving past Messenger, Messenger hit Plaintiff with the pad and caused him to fall. Plaintiff injured his knee.

Coach Walker took Plaintiff to the hospital, and he was diagnosed with a knee sprain. He was told to avoid military formations, drills, and basketball, and was further instructed to rest and ice his knee. Plaintiff left the hospital on crutches. During his recovery, Robert Spears,[1] a Teacher and Counselor ("TAC") Officer with duties that included overseeing barracks life and enforcing Hargrave's rules and policies, required Plaintiff to march and perform drills. As part of the drills, Plaintiff was required to crawl and bend his knee and carry a heavy rifle. Despite his complaints and swelling leg, Spears required Plaintiff to complete the drills as instructed. When Plaintiff complained that the drills were aggravating his knee injury, Hargrave's staff did not return Plaintiff to the hospital for follow-up care. Rather, he was seen and treated by Hargrave's team trainer.

Plaintiff's parents picked him up for break on December 20, approximately two weeks after his injury.[2] Upon his return to Maryland, he was seen by an orthopedic surgeon on December 26 and diagnosed with a torn anterior cruciate ligament ("ACL"). Plaintiff underwent surgery on his knee on January 17, 2014, and followed up with post-operative care for approximately one year.

Plaintiff filed suit in this Court on August 11, 2017, asserting a single count of negligence against Hargrave. He is ostensibly proceeding *pro se*.[3] On May 23, 2018, Plaintiff filed a Motion for Leave to File an Amended Complaint [ECF No. 26], seeking to add a claim for gross

---

[1] There appears to be great confusion over Spears's first name. Plaintiff refers to him occasionally as "Robert" and occasionally as "William."

[2] Plaintiff testified that he was on crutches for only half that time, despite his claim that his knee was worsening.

[3] See infra n.8.

negligence. That same day, Hargrave filed the present Motion for Summary Judgment [ECF No. 28], arguing that the doctrine of charitable immunity applies and bars Plaintiff's action for simple negligence. On May 31, Plaintiff filed a Supplemental Motion for Leave to File an Amended Complaint [ECF No. 34], which sought to add both a claim of gross negligence and a claim of negligent hiring/retention.[4] I held a telephonic hearing on the Motions for Leave on June 16; Plaintiff did not participate.[5] Later that day, I entered an Order denying the Motions for Leave to File an Amended Complaint [ECF No. 48.] At that time, I stated that a "Memorandum Opinion setting forth the basis for this decision will be forthcoming."

As to Hargrave's Motion for Summary Judgment, the matter was fully briefed by the parties and I heard oral argument on the Motion by telephone on July 5, 2018. I have fully reviewed the briefs, argument, and evidence of the parties, and this Opinion sets for the reasoning for my decisions on both the Motions for Leave to Amend and the Motion for Summary Judgment.

## II. **STANDARD OF REVIEW**

Plaintiff, who is proceeding *pro se*, is entitled to a certain level of deference in his pleadings by virtue of his status as an unrepresented litigant. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, "the requirement of liberal construction [of pleadings for *pro se* parties] does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court

---

[4] He also stated, in the Second Amended Complaint, that he was asserting a claim for "premises liability," but no such count was included in his pleading.

[5] During a status conference on May 29, 2018, the parties agreed to the June 19 hearing date on Plaintiff's Motion for Leave. On June 15, Plaintiff alerted the Court that he would not be able to attend the hearing and that he waived oral argument on his motion. [ECF No. 46.] Hargrave did not consent to submitting the motion on brief (see Pretrial Order ¶ 5, Oct. 27, 2017 [ECF No. 9]), so I held the hearing in Plaintiff's absence.

assume the existence of a genuine issue of material fact where none exists." Knowles v. S. C.D.C., No. 2:09-1921-MBS, 2010 WL 2990157, at *3 (D.S.C. July 29, 2010).

A court should grant leave to file an amended complaint freely "when justice so requires . . . ." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend a pleading should be denied, however, "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "[D]elay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." Id. at 509–10 (citing Davis v. Piper Aircraft Co., 615 F.2d 606, 613 (4th Cir.), cert. denied, 448 U.S. 911 (1980)).

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. Not every factual dispute will defeat a summary judgment motion; there must be a *genuine* dispute over a *material* fact. Anderson, 477 U.S. at 247–48. A fact is material where it might affect the outcome of the case in light of the controlling law. Id. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the

non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249.

## III. DISCUSSION

### A. Plaintiff's Motions for Leave to File Amended Complaints

Plaintiff's Motions for Leave to File Amended Complaints were brought in the waning hours of discovery. While delay alone "is not sufficient reason to deny leave to amend," Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)), Plaintiff's amendments are prejudicial to Hargrave and brought for the purposes of avoiding Hargrave's Motion for Summary Judgment.

An amended pleading is prejudicial if it adds "a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice applies where the amendment is offered shortly before . . . trial." Id. Here, the amendments were both offered immediately before the close of discovery, with the second amended complaint coming one day before discovery closed). While the allegation of gross negligence does not change the nature of the case, the allegation regarding negligent retention of Spears does. A case of negligence concerns Hargrave's actions in responding to Plaintiff's injuries; a case of negligent retention focuses on Spears's employment history and Hargrave's decisions in dealing with him. The former focuses on Plaintiff, while the latter has nothing to do with him. Drastically expanding the focus at this late date is undoubtedly prejudicial to Hargrave.[6]

---

[6] Although I make this decision without regard to the arguments for and against summary judgment, I note that Plaintiff has failed to show that necessary evidence regarding Spears's past conduct has been

- 5 -

Hargrave accurately paints a portrait of a Plaintiff who was disinterested in his own case until the last minute. (See Def.'s Br. in Supp. of Def.'s Mot. for Summ. J. pgs. 2–4, June 1, 2018 [ECF No. 41].) He has failed to engage in meaningful discovery, and failed to coordinate with opposing counsel to schedule his own deposition. He routinely claims that mail was not sent to him, a claim he has made against the court clerk as well. Although he is *pro se*, there is ample evidence to suggest that his father, an attorney, has been aiding Plaintiff throughout these proceedings. Plaintiff's failure to plan and pursue his case compounds the prejudice to Hargrave of a last-minute amendment.

Plaintiff's amendment is also sought in an effort to avoid summary judgment. As discussed more fully *infra*, the doctrine of charitable immunity generally bars simple negligence actions in Virginia against a charity brought by a beneficiary of that charity. See, e.g., Ola v. YMCA of S. Hampton Roads, 621 S.E.2d 70, 72 (Va. 2005). On the same day that Hargrave filed its Motion for Summary Judgment, Plaintiff filed his first proposed amended complaint. Even though he is *pro se*, the issue of charitable immunity was first raised in Hargrave's Answer. (See Answer, Aff. Defs. ¶ 4, Oct. 27, 2017 [ECF No. 7].) Despite knowing *over six months ago* that charitable immunity was an issue in this case, Plaintiff waited until the eve of the close of discovery to propose a cause of action that was not barred by the charitable immunity doctrine. His last-minute claims, filed on the same day as Hargrave's Motion for Summary Judgment, were clearly an effort to salvage his case and avoid summary judgment. Such conduct evinces Plaintiff's bad faith in pursuing the amendment. See Witmeyer v. Kilroy, 788 F.2d 1021, 1024 (4th Cir. 1986) (applying the doctrine of laches in holding that a denial of leave to amend was

---

obtained during discovery. Had the necessary information been obtained, the prejudice to Hargrave of the late amendment may have been abated.

proper); Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc., 853 F.2d 1139, 1149 (4th Cir. 1988). See also Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139–40 (5th Cir. 1993).

Because Plaintiff's proposed amended complaints are prejudicial to Hargrave and pursued in bad faith, leave to amend was denied.

B. Hargrave's Motion for Summary Judgment

According to the Supreme Court of Virginia:

> Virginia has favored a limited form of charitable immunity which exempts charitable organizations from some, but not all, tort liability. See Weston's Adm'x v. Hospital of St. Vincent, 107 S.E. 785, 792–93 (Va. 1921). A charitable institution is immune from liability to its beneficiaries for negligence arising from acts of its servants and agents, but only if due care has been exercised in their selection and retention. Bailey v. Lancaster Ruritan Rec. Ctr., Inc., 504 S.E.2d 621, 622 (Va. 1998). That immunity does not extend, however, to invitees or strangers having no beneficial relationship to the charitable institution. Thrasher v. Winand, 389 S.E.2d 699, 701 (Va. 1990). Further, the shield of charitable immunity does not extend to liability for acts of gross negligence or willful and wanton negligence. Cowan v. Hospice Support Care, Inc., 603 S.E.2d 916, 919 (Va. 2004).

Ola v. YMCA of S. Hampton Roads, 621 S.E.2d 70, 72 (Va. 2005).

In order to establish the applicability of the charitable immunity bar to liability, a defendant must prove "at least two distinct elements. The absence of either element makes the bar of charitable immunity inapplicable." Id. First, the defendant must show that it "is organized with a recognized charitable purpose and that it operates in fact in accord with that purpose." Id. "In conducting this inquiry, Virginia courts apply a two-part test, examining (1) whether the organization's articles of incorporation have a charitable or eleemosynary purpose and (2) whether the organization is in fact operated consistent with that purpose . . . ." Davidson v. The Colonial Williamsburg Foundation, 817 F. Supp. 611, 613 (E.D. Va. 1993).

In making this determination, the court must examine the organization's charter or other foundational documents to determine its stated powers and purposes. See Danville Cmty. Hosp. v. Thompson, 43 S.E.2d 882, 884 (Va. 1974). If those documents set forth "a charitable or eleemosynary purpose, there is a rebuttable presumption it operates as a charitable institution in accordance with that purpose." Ola, 621 S.E.2d at 73 (citing Mem. Hosp., Inc. v. Oakes, 108 S.E.2d 388, 392 (Va. 1959)). If, however, the organization conducts its affairs in a manner inconsistent with its charitable purpose, the presumption is rebutted and the immunity does not apply. See Danville Cmty. Hosp., 43 S.E.2d at 884. Several Virginia decisions have set for a non-exhaustive list of factors to consider when determining whether an organization acts in accordance with its stated charitable purpose. See Ola, 621 S.E.2d at 73 n.1.

Once it is established that the organization has a charitable purposes and acts in accordance with that purpose, a defendant must then establish that "the tort claimant was a beneficiary of the charitable institution at the time of the alleged injury." Id. at 73 (citing Straley v. Urbanna Chamber of Commerce, 413 S.E.2d 47, 48 (Va. 1992); Thrasher, 389 S.E.2d at 700.)

Turning to the facts of the case, Hargrave has presented sufficient evidence to show that its foundational documents set forth a charitable or eleemosynary purpose. See id. According to Hargrave's Amended and Restated Articles of Incorporation, the purposes for which Hargrave (formerly the Chatham Training School) was formed was:

> (1) To establish and maintain and institution of learning founded in the Christian faith; and
> (2) To carry on activities not required to be specifically stated in the Articles of Incorporation, for which corporations may be incorporated under the Virginia Nonstock Corporation Act, but which are exclusively for educational, religious, scientific, and charitable purposes within the meaning of § 501(c)(3) of the Internal Revenue Code of 1986, as amended (or the corresponding provision of any future United States Internal Revenue Law).

(Aff. of William Riddle, Jr. Ex. 2 [ECF No. 29-1].) Plaintiff does not dispute that Hargrave's Articles of Incorporation sets forth "a charitable or eleemosynary purpose . . . ." Ola, 621 S.E.2d at 73, and thus there is a presumption that Hargrave operates as a charitable institution in accordance with that purpose.

In order to rebut that presumption, Plaintiff makes two arguments. First, he contends that Hargrave negligently retained Spears after learning of his "abusive" conduct towards students. Hargrave counters that there is no negligent retention claim before the Court. That is accurate, but Plaintiff's argument is still a valid one. A charity is only entitled to immunity if it exercised due care in the hiring and retention of its agents. See Bailey v. Lancaster Ruritan Rec. Ctr., Inc., 504 S.E.2d 621, 622 (Va. 1998); Straley v. Urbanna Chamber of Commerce, 413 S.E.2d 47, 49 (Va. 1992). Therefore, if Hargrave did not exercise due care in the retention of Spears, the charitable immunity doctrine will not shield Hargrave from liability, regardless of whether a separate negligent retention claim has been made against them under Virginia law.

Plaintiff has failed to offer sufficient evidence to show that Hargrave did not exercise due care in retaining Spears. Plaintiff proffers that, on four occasions prior to Plaintiff's injury, Spears made inappropriate comments to a student. (See Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. pgs. 3–4, May 31, 2018 [ECF No. 36].) In September 2009, a cadet "claimed Spears made an inappropriate comment. Spears received a counseling letter." In June 2011, a cadet "claimed that Spears made [the cadet] feel 'talked down to'. Spears received a verbal counseling." In September of 2011, a cadet "claimed Spears engaged in a verbal altercation with [the cadet]. Spears received a written warning and a 2-day suspension without pay that was suspended for a 45-day probationary period." And in the summer of 2012, "A cadet claimed Spears made an inappropriate comment to the cadet. Spears received a Letter of Reprimand and

[was] placed on probation for the remainder of the Contract year." (Id. (quoting Def.'s Responses to Interrogatories).)

This evidence in insufficient to show a lack of due care in Spears's retention. First, and most fundamentally, Plaintiff has failed to produce any evidence about the facts of these encounters so that a determination can be made as to the appropriateness of Hargrave's responses. For certain infractions, a counseling letter would be an appropriate response from an employer and establish the requisite due care. For others, a counseling letter would be woefully insufficient. As to Spears's employment record, I am left to guess. The negative consequences of a lack of evidence have to be borne by Plaintiff, regardless of his *pro se* status. See Knowles v. S. C.D.C., No. 2:09-1921-MBS, 2010 WL 2990157, at *3 (D.S.C. July 29, 2010) (noting that the leniency afforded pro se parties "does not mean that the court . . . can assume the existence of a genuine issue of material fact where none exists"). In the absence of evidence to show that Hargrave did not exercise due care in counseling and reprimanding Spears, Plaintiff's argument is unpersuasive.

Moreover, nothing in Spears's background involved conduct sufficient to put Hargrave on notice that Spears could commit the type of harm alleged by Plaintiff.[7] At its core, Plaintiff argues that Spears apparently minor infractions in the past show that Hargrave was negligent in retaining him. That argument is simply not supportable on the Record before me. Absent *some* showing that the infractions in the past were in any way related to the alleged misconduct here, I cannot conclude that Hargrave did not exercise due care in retaining Spears sufficient to strip it of the protections of charitable immunity.

---

[7] Plaintiff calls it "wanton" "physical abuse" and "cruel punishment." His characterizations are not evidence, buy that also are far afield from "talking down to" a cadet.

Plaintiff's second argument is that, because Spears was negligent in his dealings with him, and because negligence is not part of Hargrave's charitable purpose, Hargrave was not acting in accordance with its charitable purpose, and thus is not entitled to immunity. This argument is nonsensical, as it would eviscerate the policy Virginia has chosen to adopt. If negligence, by itself, is sufficient to lift the charitable immunity bar *against claims of negligence*, the immunity would cease to exist. Spears's actions, even assuming they were negligent, are insufficient to show that Hargrave does not act in accordance with its charitable purpose.

Because Plaintiff is proceeding *pro se*,[8] I will consider other evidence in the record that bears on whether Hargrave was acting in accordance with its charitable purpose. The Supreme Court of Virginia has compiled a list of ten, non-exhaustive factors to consider when determining whether a charitable institution acts in accordance with its charitable purpose.

> (1) Does the entity's charter limit the entity to a charitable or eleemosynary purpose? See, e.g., Oakes, 108 S.E.2d at 392.
> (2) Does the entity's charter contain a non-for-profit limitation? Id.
> (3) Is the entity's financial purpose to break even or earn a profit? Id.
> (4) Does the entity in fact earn a profit and, if so, how does that occur? Id.
> (5) If the entity earns a profit (a surplus beyond expenses) must that be used for a charitable purpose? Id.
> (6) Does the entity depend on contributions and donations for a substantial portion of its existence? See, e.g., Weston, 107 S.E. at 786.
> (7) Is the entity exempt from federal income tax and/or local real estate tax? See, e.g., Bailey, 504 S.E.2d at 623.
> (8) Does the entity's provision of services take into consideration a person's ability to pay for such services? See, e.g., Oakes, 108 S.E.2d at 392.

---

[8] Hargrave disputes this, and I have my own suspicions. Plaintiff's pleadings appear to have been crafted by or with the assistance of any attorney—most likely Plaintiff's father. As a result, Hargrave insists that Plaintiff is not entitled to the leniency typically afforded *pro se* parties. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). I see no reason to go that far, as Hargrave is entitled to summary judgment despite any leniency I am empowered to give Plaintiff at this stage. No leniency from this court can erase the legal and evidentiary shortcomings of his case.

(9) Does the entity have stockholders or others with an equity stake in its capital?  Id.
(10)   Are the directors and officers of the entity compensated and, if so, on what basis?  Id.

Ola, 621 S.E.2d at 73 n.1.  The affidavit of William Riddle, Jr., Hargrave's Director of Finance, establishes the following:

(1) Hargrave's Articles of Incorporation state that "no part of the net earnings of [Hargrave] shall inure to the benefit of, or be distributable to, its members, Trustees, officers, or other private persons," except insofar as is necessary to pay salaries and make distributions in support of Hargrave's mission (Riddle Aff. ¶ 10);
(2) Hargrave's Articles of Incorporation prohibits it from carrying on "any activities not permitted to be carried on" by a tax-exempt organization (id. ¶ 11);
(3) "In order to sustain its mission, Hargrave must try to avoid operating at a loss each year" (id. ¶ 30);
(4) Over the last several years, Hargrave has not earned a profit and has operated at a loss, relying on its endowment to make up the difference (id. ¶¶ 31–32);
(5) Hargrave's profits are typically used to pay down debts or other liabilities (id. ¶ 35);
(6) "Because tuition and fees do not cover its operating costs, Hargrave heavily relies on contributions in the form of grants from private foundations and donations from entities and individuals in order to cover its operating costs" (id. ¶ 23);
(7) Hargrave is a 501(c)(3) non-profit, non-stock corporation (id. ¶ 3);
(8) Approximately 50% of Hargrave students received financial aid or need-based scholarships during the 2017–2018 academic year (id. ¶ 18);
(9) Hargrave is a non-stock corporation and does not have stockholders with an equity stake in it (id. ¶ 4); and
(10)   "No member of the board of trustees receives any salary, compensation, or other emolument, direct or indirect, from Hargrave for his service as a Trustee" (id. ¶ 9).

Accordingly, when considering these factors and all the other evidence, Hargrave has established that it acts in accordance with its charitable purpose, and has therefore established the first element necessary for the invocation of charitable immunity.  See also Doe v. Va. Wesleyan

College, Nos. CL14-6942-00, CL-6942-01, 2015 WL 12591820, at *4 (Va. Cir. Ct. Dec. 17, 2015) (opining that the Fourth Circuit "appeared to expressly hold that *all* non-profit educational institutions are entitled to charitable immunity" in Ettlinger v. Trustees of Randolph-Macon College, 31 F.2d 869, 871 (4th Cir. 1929)).

Turning to the second element of the charitable immunity analysis—was Plaintiff a beneficiary of Hargrave at the time of his injury? "In Virginia, a person is a beneficiary of a charity if he or she has a "beneficial relationship" to the charitable organization." Ola, 621 S.E.2d at 77 (citing Roanoke Hosp. Ass'n v. Hayes, 133 S.E.2d 559, 562 (Va. 1963)). As a student of Hargrave, Plaintiff was unquestionably a beneficiary of Hargrave's charitable purpose. In fact, the students of Hargrave are far and away its primary beneficiaries.

Plaintiff counters that, because he paid full tuition, he was not a beneficiary. Even granting Plaintiff's contention that he did not receive any scholarship from Hargrave, payment of tuition does not prevent Plaintiff from being considered a beneficiary of Hargrave. The Fourth Circuit stated the issue this way:

> And it is equally clear both that the eleemosynary or charitable nature of an educational institution is not destroyed by the fact that it makes a charge for tuition, and that the payment of tuition by its students does not prevent their being considered beneficiaries of the charity. . . . In a very direct and practical sense, therefore, not only are such institutions engaged in a work of charity, but the pay[ing] student as well as others is a beneficiary thereof. And, apart from the fact that what such a student pays does not equal the cost of his education, he is a beneficiary of the charity for the reason that but for the charitable gifts made to the institution and the charitable work which it is carrying on, it would not exist to serve him. These principles are settled by the overwhelming weight of authority.

Ettlinger v. Trustees of Randolph-Macon College, 31 F.2d 869, 871 (4th Cir. 1929) (quoted in Ola, 621 S.E.2d at 77). Plaintiff was a beneficiary of Hargrave at the time of his injury,

regardless of whether he paid full tuition or received a scholarship. Accord Ola, 621 S.E.2d at 77–78 ("Ola clearly was a beneficiary of the YMCA's charity, not because she received membership at a reduced fee, but because she was participating in the YMCA swimming program at the time of her injury.").

Because Hargrave is a charitable institution acting in accordance with its charitable purpose, and because Plaintiff was a beneficiary of the charity at the time of his injury, the charitable immunity doctrine bars Plaintiff's negligence claim and Hargrave is entitled to summary judgment.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Hargrave's Motion for Summary Judgment will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all other counsel of record.

Entered this 10th day of July, 2018.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE